36460. MOATE *et al. v.* H. L. GREEN COMPANY.

DECIDED APRIL 11, 1957.

*Martin, Snow & Grant, Joe Patterson, Jr.,* for plaintiffs in error.
*Edward F. Taylor, David L. Mincey,* contra.

QUILLIAN, J. ■ There is no question that under the facts of the case as they appear from the brief of evidence a verdict for

the plaintiff was not demanded, and hence the trial judge did not err in granting the defendant a new trial. The rule as stated in numerous opinions of our appellate courts is aptly stated in *Wimburn* v. *Fiske*, 140 *Ga.* 132 (78 S. E. 717): "There being conflicting evidence, and the verdict not being required thereby, the first grant of a new trial will not be reversed. Civil Code § 6204."

■ The question as to whether the trial court was right in granting the defendant's motion for judgment notwithstanding the verdict is more complex and difficult of solution. There are several principles of law that must be considered in determining that question.

Unless a verdict should be directed against the plaintiff a judgment notwithstanding the verdict for the plaintiff cannot be legally entered in favor of the defendant.

Only when the plaintiff's evidence does fail to prove the case as laid in the petition, without revealing as defense matter fatal to the cause pleaded, or where the evidence adduced by the defendant as a matter of law conclusively refutes the proof made of the plaintiff's case can a verdict for the defendant be directed. *City of Commerce* v. *Bradford*, 94 *Ga. App.* 284 (94 S. E. 2d 160).

Applying these rules we first inquire of the record as to the sufficiency of the evidence offered by the plaintiff to prove the case laid in the petition. As was pointed out in the statement of fact preceding this opinion, the petition predicates the plaintiff's right of recovery on the assertions: (a) that the merchandise comprising the items of the account sued upon were purchased of the plaintiff partnership by the defendant corporation through its authorized agent, Sam Di Nardo; (b) that the goods were purchased with the consent, knowledge and approval of the defendant; (c) that the defendant assured the plaintiff the debt incurred in the purchase of the merchandise was its own; (d) that the defendant promised to pay the plaintiff for the goods purchased.

The plaintiff's proof that Di Nardo was the defendant's agent authorized to buy merchandise entirely failed. The evidence showed without conflict that Di Nardo was not vested with authority to buy goods for the defendant. There was circumstantial evidence submitted by the plaintiff and admitted by the

defendant from which, standing alone, it might be inferred that Di Nardo was held out by the defendant as its agent, clothed with apparent authority to buy produce for the account of the defendant. This evidence was that the produce department in the defendant's store was advertised in the newspapers as the defendant's business, and the fact was undisputed that Di Nardo was in charge of that department.

Mrs. Moate throughout her testimony denied that she knew she was dealing with Di Nardo as an individual, or that she was aware that the produce business he conducted in the defendant's store building was his own, and insisted that she thought she was dealing in behalf of the plaintiff with Di Nardo only as the agent of the defendant.

The circumstances detailed above plus the part of Mrs. Moate's testimony referred to standing alone was prima facie proof that Di Nardo was the agent of the defendant clothed with authority to purchase the items of merchandise comprising the account. However, there was other evidence in the nature of admissions by the plaintiff which removed the factual foundation for the conclusion that Di Nardo was the agent of the defendant vested with even indicia of authority to purchase the plaintiff's merchandise for the defendant.

The plaintiff's witness, T. T. Dixon, and former salesman, testified: that Mark Donner preceded Di Nardo as an occupant of the space in the defendant's store devoted to the produce business; that Donner approached him and offered to buy produce of the plaintiff; that he considered Donner a bad risk and refused to sell him without a guarantee of the payment of the account by Mr. Lipson, the defendant's manager; that the defendant acting through Lipson guaranteed the payment of the account: that he knew that the goods were being sold to Donner and that the payment of the account was simply being guaranteed by the defendant; that thereafter for a period of some five years at regular intervals he presented the invoices for the merchandise bought by Donner to the defendant for payment, and on each occasion the defendant promptly paid them. The knowledge of T. T. Dixon, the agent of the plaintiff, that Donner was buying goods delivered to him for himself and not for the de-

fendant was imputable to the plaintiff. In *Friese* v. *Simpson & Harper*, 15 *Ga. App.* 786 (4b) (84 S. E. 219) this court held: "When notice of a fact is communicated to a general agent or to a special agent in absolute charge of a particular business, knowledge of all the facts suggested by the notice is imputable to the principal."

However, the invocation of that rule is not necessary in order for knowledge of the relationship of Donner and the defendant, and their respective relationship to the account to be brought home to the plaintiff. Mrs. Moate, a member of the plaintiff partnership, testified that she had knowledge of the arrangement under which the merchandise was sold to Donner. She gave evidence that after Di Nardo succeeded Donner she agreed with Mr. Lipson, the defendant's manager, that the account would continue to be handled in the same way.

But had the plaintiff not then been directly informed of Di Nardo's status as an individual dealer and that they were not dealing with him as the agent of the defendant, there was proof offered by the plaintiff which disclosed that the plaintiff did actually know the produce department conducted by him, though in the defendant's store building, was Di Nardo's individual business, and for eight years and during the whole life of the account dealt with him on that basis. Mrs. Moate related: that subsequently to the initial conversation with Mr. Lipson, the defendant's manager, in which it was agreed between them that the account would be handled as it previously had been, she never mentioned the account to any employer of the defendant until the day Di Nardo was adjudicated a bankrupt; that her dealings were exclusively with him; that so long as Di Nardo continued to conduct the produce business she never applied to anyone but him for payment of the account; that he paid her right along; that he gave his individual checks, some of which were returned because he did not have sufficient funds in his bank account to pay them; that she approached him alone with request that he make them good and that he complied with her request and made them good. She further recalled instances when she advanced him money with which he purchased produce and that she guaranteed payment of his checks given to farmers

for produce. During this period the account continued to run until it amounted to $1,859.15 when Di Nardo's bankruptcy terminated it. While the account was largely overdue several years and Di Nardo's inability to pay it was apparent, the plaintiff continued to deal with him individually and never so far as the record reveals called the balance of the account to the defendant's notice, though the uncontradicted evidence showed the defendant was a solvent going concern and had always paid the account of Di Nardo's predecessor, Donner, promptly.

Now we consider elements of the evidence offered to prove that the merchandise comprising the items of the account sued upon were purchased by Di Nardo with the consent, knowledge and approval of the defendant. Unless the defendant was in some way liable to pay the account, its consent, knowledge and approval of the sale made by the plaintiff Di Nardo would be that of a mere stranger to the transaction, and hence of no legal significance. The proof of Di Nardo's agency having failed, the liability of the defendant to pay the account depends upon whether either the further averment of the petition that the defendant acknowledged the account to be its own or that the defendant promised the plaintiff to pay the account. The record does not contain any evidence that showed or from which it could be inferred that the defendant acknowledged that the account was its own or that it was indebted to the plaintiff for goods delivered to Di Nardo.

There was some evidence that the defendant promised to pay the account. Mrs. Moate, previously referred to as a member of the plaintiff partnership, testified that before the plaintiff furnished any produce to Di Nardo, the defendant's manager, David Lipson, assured her that the account was as good as gold and promised that the defendant would pay for produce that was to be delivered by the plaintiff to Di Nardo. According to her version of the agreement, the promise was conditioned upon the account being handled just as it had been in the past.

The defendant insists that, if the promise was made, it was in the nature of a verbal guarantee and was for this reason unenforceable.

The verbal guarantee by one not otherwise bound by a contract

that a party to the contract will abide by its terms is in contravention of the statute of frauds and is void. *Buthenthal & Bickart* v. *Moore*, 111 *Ga.* 297 (36 S. E. 689) ; *Christian* v. *Wood Bros.*, 36 *Ga. App.* 707 (137 S. E. 852).

But the agreement testified to by Mrs. Moate was not a guaranty. A contract of guaranty is conditioned upon the promisee's inability to recover of or enforce performance by the principal (*W. T. Rawleigh Co.* v. *Overstreet*, 71 *Ga. App.* 873, 32 S. E. 2d 574; *McMullan* v. *Community Acceptance Corp.*, 78 *Ga. App.* 616, 51 S. E. 2d 575), and is not an absolute agreement to answer for the default of the principal.

That the parties denominated the promise a guarantee did not effect its real nature. It is the substance and not the nomenclature of the agreement that determines its character. *Schlittler & Johnson* v. *Deering Harvester Co.*, 3 *Ga. App.* 86, 88 (59 S. E. 342) ; *W. T. Rawleigh Co.* v. *Overstreet*, supra. The promise of the plaintiff as shown by Mrs. Moate's testimony was an original undertaking not required by the statute of frauds to be in writing. *Henderson* v. *Hughes*, 4 *Ga. App.* 52 (1, 2) (60 S. E. 813).

It is also the defendant corporation's position that the promise was a pledge of its credit for the benefit of another and was for this reason illegal. A corporation, unless special authority is conferred on it by its charter cannot lend its credit to another. The party asserting that the corporation is vested with such authority has the burden of proving the assertion. *Nalley Land & Investment Co.* v. *Merchants & Planters Bank*, 178 *Ga.* 818 (2) (174 S. E. 618). But without special charter authority a corporation may pledge its credit by promising to pay the obligation of another, if the promise be made in the promotion of the business its charter authorizes. *Bankers Trust & Audit Co.* v. *Hanover National Bank*, 35 *Ga. App.* 619 (2) (134 S. E. 195) ; *Bank of Lumpkin* v. *Peoples Bank of Athens*, 27 *Ga. App.* 459, 461 (108 S. E. 835). Under the facts revealed by the evidence the defendant was paid for the space occupied by the latter on the basis of the amount of his sales. Hence, it was obviously beneficial to the defendant's business that the plaintiff furnish Di Nardo goods to sell.

However, it was essential to the plaintiff's right to recover

on the defendant's promise to pay the account, that the plaintiff abide by the condition upon which the promise was made. The promise was based upon the sole condition that the account be handled in the same manner that it had been in the past. The plaintiff's own proof showed that the account had been handled for some eight years during which time goods were delivered to Mark Donner who occupied the space in the defendant's store by the plaintiff delivering produce to Donner and presenting bills representing their price to the defendant at regular two-week intervals. In this way the plaintiff kept the defendant currently advised of the amount due on the account. The result was that the defendant was thus frequently and regularly informed of what Donner was buying, and had the opportunity to check regularly the extent to which he was making use of its credit.

During the eight years that the goods were delivered to Di Nardo the plaintiff elected to collect exclusively from him, neither requested nor received payments of the defendant, and did not, so far as the record disclosed, inform the defendant of the balance due for goods. It is true that she recalled instances when invoices for some of the goods furnished Di Nardo were mailed to the defendant, but she did not profess to know how they were billed, that is to whom they were made out, nor was it shown that any of them showed the balance due on the account. The result of the plaintiff having changed the manner in which the account was handled was naturally essential to the validity and binding quality of a contract, and it is axiomatic that he who would enforce the performance of a contract must himself abide by its terms.

The plaintiff's violation of the condition upon which the defendant's promise to pay the account was made released the defendant from the promise.

The plaintiff argues that the grant of the defendant's motion for judgment notwithstanding the verdict was vacated by the judgment of the trial court entered at the same term granting the defendant's motion for new trial. The point is one of interest. It has been held that where in the same case inconsistent judgments are rendered by a trial court during the same term the

first is vacated by the second. *Sheraton Whitehall Corp.* v. *McConnell*, 88 *Ga. App.* 725, 730 (77 S. E. 2d 752). And in *Wooten* v. *Life Ins. Co. of Georgia*, 93 *Ga. App.* 665, 670 (92 S. E. 2d 567) it was held: "Courts cannot grant a new trial by reason of an error committed on a former trial and at the same time grant a motion for a judgment notwithstanding the verdict of such former trial. The grant of the latter motion is in conflict with the granting of the former."

In *Crusade* v. *Capital Transit Co.*, 8 A. L. R. 2d 229, 231, it was held: "The proper procedure by a trial court with respect to an alternative motion for a new trial, when it grants a motion for judgment, has been the subject of some confusion in the Federal courts. See *Pessagno* v. *Euclid Inv. Co., Inc.*, 72 App. DC 141, 112 F2d 577; *Pruitt* v. *Hardware Dealers Mut. Fire Ins. Co.*, 5 Cir, 112 F2d 140. The Supreme Court in *Montgomery Ward & Co.* v. *Duncan*, 311 US 243, 61 S Ct 189, 195, 85 L ed 149, eliminated some of that confusion. It held that although the two motions may be made in the alternative each motion has its own office; that the granting of a motion for judgment does not have the effect of an automatic denial of a motion for new trial; that if alternative prayers are presented the trial judge should rule on the motion for judgment and whatever his ruling on that motion, should also rule on the motion for a new trial, 'indicating the grounds of his decision'; and may grant the motion for judgment and also in the alternative grant the motion for a new trial."

The case quoted dealt largely with motions for the two forms of relief made under the Federal Rules of Practice. But in a well considered opinion written by Chief Judge Felton, this court in *Shetzen* v. *C. G. Aycock Realty Co.*, 93 *Ga. App.* 477 (92 S. E. 2d 114) held that where a motion for judgment notwithstanding the verdict and a motion for new trial are both filed the motions are considered to be in the alternative, that the trial court properly enters judgments upon both motions; that the judgments are not in a legal sense repugnant, but are construed as one judgment in the alternative. In the same case the court held that where entered at the same term the judgments disposing of the motion for judgment notwithstanding the verdict and the motion

for new trial are to be considered as having been entered at the same time. We think the holding in *Shetzen* v. *C. G. Aycock Realty Co.*, supra, is a correct pronouncement, to which we adhere.

*Judgment affirmed. Felton, C. J. and Nichols, J., concur.*