A91A1952, A91A1953. TUCKER STATION, LTD. v. CHALET I, INC. et al.; and vice versa.
(417 SE2d 40)

POPE, Judge.

Plaintiff Tucker Station, Ltd. ("landlord") was, at all times pertinent to this case, the owner of a shopping center. It entered into a lease with defendant Chalet I, Inc. ("tenant") for space in the shopping center for the operation of a restaurant. The tenant went out of business after approximately ten months of operation, abandoned the premises and ceased paying rent. The landlord brought suit against the tenant for breach of the lease and against three individual defendants who were owners of the tenant (William J. Davidson, John Davidson and Walter R. Duke), to recover the cost of the improvements made to the leased property pursuant to a written guaranty signed by the owners. Defendants answered and filed a counterclaim against the landlord alleging fraud and breach of the lease.

The trial court granted summary judgment to the landlord and awarded damages in the sum of $28,058.34 against the tenant and $48,754.11 against defendant William J. Davidson, $10,834.25 against defendant John Davidson and $28,754.11 against defendant Duke. Approximately two months after the date the judgment was entered, defendants filed a motion to set aside the judgment on the ground that they received no notification of the judgment until after the thirty-day period for filing an appeal to the judgment had expired. The trial court granted the motion to set aside, vacated the original judgment and then re-entered the judgment, thereby giving defendants an opportunity to appeal. Defendants filed an appeal from the re-entered judgment (Case No. A91A1953) and plaintiff landlord filed an appeal from the order setting aside and vacating the original judgment (Case No. A91A1952).

## Case No. A91A1952

1. In support of the motion to set aside the original judgment, defendants' attorney submitted an affidavit attesting that he did not receive a copy of the judgment from the court and he first became aware judgment had been entered against his clients when he received a letter from the landlord's attorney seeking to collect the judgment. In the order conditionally granting the motion to set aside, the trial court stated that it notified counsel for both parties on the day the judgment was signed and mailed copies to both counsel. Nevertheless, the trial court ruled, "in the interest of justice," to set aside and re-enter the judgment if, within 30 days, defendants posted bond in the amount of $105,000 and paid $2,000 to plaintiff for attorney fees. The conditions were met and the original judgment was vacated and re-entered.

Plaintiff landlord argues the trial court erred in granting the motion to set aside because defendants failed to show they did not receive notice of the judgment and failed to show they exercised due diligence in determining when the judgment had been entered. Even though the order granting the motion to set aside indicates the court "notified" both counsel (presumably by telephone) and mailed copies to both, the undisputed evidence shows defendants did not *receive* notice. The Georgia Supreme Court has ruled that a trial judge should refuse to grant a motion to set aside where the judge finds notice was sent and received, but may grant such a motion upon a finding that notice was not provided as required by OCGA § 15-6-21 (c). *Cambron v. Canal Ins. Co.*, 246 Ga. 147 (1) (269 SE2d 426) (1980). In this case, even though notice was sent, it is undisputed that it was not received. We find no abuse of the trial court's discretion in granting the motion, particularly in light of the protection afforded to plaintiff by the requirement that defendants post bond and pay plaintiff's attorney fees.

## Case No. A91A1953

2. The lease between the landlord and tenant included a special stipulation whereby the landlord agreed to extend a credit allowance of $100,000 for tenant finishes to the leased premises. On the same day the lease was executed, the individual defendants executed a guaranty agreement to guarantee personally for one year the leasehold improvements set forth in the special stipulation to the lease. The guaranty agreement, defining all three owners as "Guarantor," further provided: "in the event that for any reason, the *Guarantor* or its assigns and successors, default and Landlord subsequently dispossesses said Tenant or its assigns and successors, the Guarantor, to the

extent of their respective interest in the corporation, do [sic] hereby guarantee to Landlord the full and prompt payment of the amount of leasehold improvements enumerated herein, Special Stipulation #1, for a period of one (1) [year] from the Commencement Date of this Lease." (Emphasis supplied.) The landlord presented testimony that a portion of each lease payment included an amount by which the tenant finish allowance would have been repaid over the course of the five-year lease. The trial court granted judgment to the landlord in an amount equal to the amount remaining to be paid for the tenant finish allowance against the individual defendants in proportion to the interest each individual held in the tenant corporation.

First, defendants argue the trial court erred in granting summary judgment to the landlord on the breach of guaranty claim against the individual defendants because the conditions precedent to the imposition of liability under the agreement were not satisfied. Defendants first argue the agreement requires the "Guarantor" to be in default and the record shows the individual guarantors were not in default. While it is true the agreement uses the word "Guarantor," it is obvious the document refers to the default of the *tenant* and not the guarantors. Because the guaranty agreement was executed at the same time and in the course of the same transaction as the lease, the two instruments should be read and construed together. See *Interstate Fire Ins. Co. v. National Indem. Co.*, 157 Ga. App. 516 (277 SE2d 802) (1981). Despite the misuse of the term "Guarantor," the guaranty agreement clearly indicates the intent of the individual defendants to guarantee the credit extended by the landlord for tenant finishes in the event of default by the tenant within one year of execution of the lease. Thus it was not error for the trial court to correct an obvious error and interpret the contract accordingly. See *Price v. Age, Ltd.*, 194 Ga. App. 141 (1) (390 SE2d 242) (1990).

Secondly, defendants argue the landlord was not entitled to enforce the guaranty agreement because the tenant was not in default and the landlord had not dispossessed the tenant, as required by the guaranty agreement. Pursuant to Article X of the lease, the tenant is in default if it fails to pay rent due or vacates or abandons the premises. Upon default, the landlord is granted the immediate right to re-enter the premises and take possession without service of notice or legal process. The record shows the tenant vacated the premises and the landlord notified the tenant that it was in default. Thus the facts show the tenant was in default pursuant to the terms of the lease; therefore, it was not necessary for the landlord to resort to legal process in order to pursue its rights under the contract. See *Spitzer v. Selig Enterprises*, 140 Ga. App. 156 (2) (230 SE2d 121) (1976); see also *Kimber v. Towne Hills Dev. Co.*, 156 Ga. App. 401, 402 (1) (274 SE2d 620) (1980).

3. According to defendants, the principal debtor is the tenant. Because the agreement between the landlord and the individual defendants is entitled "Guaranty Agreement," defendants argue as the guarantors they should not be held liable for an amount in excess of the amount owed by the principal debtor. For that reason, defendants argue the trial court erred in granting summary judgment to the landlord against the individual defendants in an amount substantially greater than the judgment against the tenant. The distinction between contracts of suretyship and guaranty have been abolished, however. *Thomasson v. Pineco, Inc.*, 173 Ga. App. 794 (328 SE2d 410) (1985). Instead, the courts look to see what the instrument, whatever it is called, obligates the promising party to do. See *Arkansas Fuel Oil Co. v. Young*, 66 Ga. App. 33 (16 SE2d 909) (1941). "That the parties denominated the promise a guarantee did not [a]ffect its real nature. It is the substance and not the nomenclature of the agreement that determines its character." *Moate v. H. L. Green Co.*, 95 Ga. App. 493, 504 (2) (98 SE2d 185) (1957). The agreement expressly states that the obligation of the individual guarantors is primary and grants the landlord the right to proceed against them without having commenced an action or obtained a judgment against the tenant. Thus, the instrument obligated the guarantors as primary debtors for the sum expended on tenant finishes for a period of one year. They were liable for this sum regardless of the sum owed by the tenant under the lease.

4. In the agreement, the guarantors agreed to pay the amount expended on tenant finishes in the event of default "to the extent of their respective interest in the corporation [Chalet I, Inc.] . . . ." Relying upon their own affidavits and deposition testimony, defendants argue they intended only to obligate themselves to the extent of any equity they held in the corporation. Pursuant to the rules for interpretation of contracts, parol evidence is inadmissible to vary a written contract except to explain an ambiguity. OCGA § 13-2-2 (1). We find no merit in defendant's argument that the terms of the guaranty agreement are ambiguous in regard to the extent of liability imposed on the individual guarantors. The landlord was aware that the three individual guarantors held unequal shares of ownership in the tenant corporation. Thus, the reference to "their respective interest" is unambiguous and is clearly intended to impose liability upon the three in relation to their ownership interest. The trial court did not err in awarding a judgment against each individual defendant in an amount proportionate to his ownership in the tenant.

5. Finally, defendants argue the landlord is not entitled to summary judgment against the tenant for breach of the lease because issues of fact remain concerning whether the landlord fraudulently induced the tenant to enter into the lease. Defendants operated a

chicken and rib rotisserie restaurant on the leased premises. They claim they were unable to remain in business after a Chick-Fil-A fast food restaurant opened on a lot not owned by the landlord but immediately adjacent to the shopping center. Defendants raised the defense of fraud in the inducement and also filed a counterclaim for fraud, alleging the landlord made false representations concerning the interest of Chick-Fil-A in the shopping center and committed fraud by failing to inform the tenant that it did not own the parcel of land on which the Chick-Fil-A restaurant eventually opened. Defendants raise no error in regard to the dismissal of their counterclaim. They argue, however, that the trial court erred in granting summary judgment to the landlord because issues of fact remain in regard to the defense that the contract is not enforceable due to the landlord's fraud in inducing the tenant to enter into the contract.

The record contains no evidence to support defendants' defense of fraud in the inducement. The individual owners of the tenant testified they were told by a representative of the landlord that Chick-Fil-A had expressed an interest in becoming a tenant of the shopping center but ultimately did not enter into a lease. Defendant denies such a representation was made, but even if it was made, the representation was not shown to be false because Chick-Fil-A *did not* enter into a lease with the landlord. Moreover, the lease contains a clause indicating that the tenant did not rely on representations not contained within the written lease. We reject defendants' argument that they were falsely led to believe that the parcel on which Chick-Fil-A opened a restaurant was owned by the landlord and was part of the shopping center and that failure to inform them that the parcel did not belong to the landlord was constructive fraud. The lease contained a legal description of the shopping center premises as well as a drawn plan of the premises which labeled the Chick-Fil-A parcel as an "outparcel . . . owned by others." The trial court did not err in granting summary judgment to the landlord against the tenant.

*Judgments affirmed. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 13, 1992.

*Parker, Johnson, Cook & Dunlevie, Kirk W. Watkins, Everett W. Gee III*, for appellant.
*Smith, Gambrell & Russell, David M. Brown*, for appellees.